No. 03-2470
(Judge Wolski)

# In the United States Court of Federal Claims

ANTHONY J. BROOKS, )
)
*Plaintiff*, )
)
v. )
)
UNITED STATES, )
)
*Defendant*. )

PLAINTIFF'S MOTION FOR JUDGMENT
ON THE ADMINISTRATIVE RECORD

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, D.C. 20036
(202) 466-8960 tel
(202) 293-8103 fax
efidell@feldesmantucker.com

*Attorney of Record for Plaintiff*

*Of Counsel*:

Matthew S. Freedus

June 22, 2007

# INDEX

*Page*

Table of Citations ........ i

Glossary ........ ii

Questions Presented ........ 1

WAS THE BCCCR'S DECISION ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, UNSUPPORTED BY SUBSTANTIAL EVIDENCE, OR CONTRARY TO LAW?

TO WHAT RELIEF IS CAPTAIN BROOKS ENTITLED?

Statement of Facts ........ 1

1. General Background ........ 1
2. Captain Brooks's Grievance and BCCCR Case ........ 3
3. The BCCCR's First Decision ........ 5
4. The 2005 Remand ........ 7
5. The 2006 Remand ........ 8
6. Further Proceedings in this Court ........ 11

Argument ........ 11

I. DEFENDANT HAS NOT CARRIED ITS BURDEN OF PROVING THAT CAPTAIN BROOKS'S PROMOTION TO REAR ADMIRAL WOULD HAVE BEEN RESCINDED EVEN IF HE HAD NOT RECEIVED THE LETTER OF REPRIMAND ........ 11

II. CAPTAIN BROOKS IS ENTITLED TO MAKE-WHOLE RELIEF ........ 14

Conclusion ........ 15

# TABLE OF CITATIONS

*Cases:*

*Brooks v. United States*, 65 Fed. Cl. 135 (2005) ........ 7
*Caddington v. United States*, 147 Ct. Cl. 629, 178 F. Supp. 604 (1959) ........ 14, 15
*Chappell v. Wallace*, 462 U.S. 296 (1983) ........ 12
*Duhon v. United States*, 461 F.2d 1278 (Ct. Cl. 1972) ........ 14
*Engels v. United States*, 230 Ct. Cl. 465, 678 F.2d 173 (1982) ........ 13, 14
*Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997) ........ 13
*Heisig v. United States*, 719 F.2d 1153 (Fed. Cir. 1983) ........ 12
*Law v. United States*, 11 F.3d 1061 (Fed. Cir. 1993) ........ 11
*Thomas v. Cheney*, 925 F.2d 1407 (Fed. Cir. 1991) ........ 14

*Statutes:*

Privacy Act, 5 U.S.C. § 552a ........ 4, 5, 6, 10, 12
10 U.S.C. § 1552 ........ 3
10 U.S.C. § 1552(g) ........ 3
Tucker Act, 28 U.S.C. § 1491(a)(2) ........ 16
37 U.S.C. § 101(3) ........ 1
Military Pay Act, 37 U.S.C. § 204(a)(1) ........ 1
42 U.S.C. § 206(b) ........ 2
42 U.S.C. § 206(c)(1) ........ 2
42 U.S.C. § 207(a) ........ 2
42 U.S.C. § 213a(a)(12) ........ 2

*Rules and Regulations:*

PHS Commissioned Corps Personnel Manual subch. 23.4:
Instruction 6 ........ 2
Instruction 7 ........ 2
RCFC 52.1(b) ........ 1
RCFC 52.2(b)(4) ........ 11

GLOSSARY

| | |
|---|---|
| AR | Administrative Record |
| ASG | Assistant Surgeon General |
| BCCCR | Board for Correction of PHS Commissioned Corps Records |
| CAPT | Captain |
| CCPM | Commissioned Corps Personnel Manual |
| CPO | Chief Professional Officer |
| DCP | Division of Commissioned Personnel |
| HHS | Department of Health and Human Services |
| LOR | Letter of Reprimand |
| OCCO | Office of Commissioned Corps Operations |
| OPF | Official Personnel Folder |
| OS | Office of the Secretary of Health and Human Services |
| PHS | Public Health Service |
| PSC | Program Support Center |
| RADM | Rear Admiral |
| RCFC | Rules of United States Court of Federal Claims |
| SG | Surgeon General of the United States |

# In the United States Court of Federal Claims

| | | |
|---|---|---|
| ANTHONY J. BROOKS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 03-2470 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| *Defendant.* | ) | Judge Wolski |

PLAINTIFF'S MOTION FOR JUDGMENT
ON THE ADMINISTRATIVE RECORD

In accordance with RCFC 52.1(b), Captain Brooks respectfully moves for judgment on the administrative record ("A.R.").[1]

*Question Presented*

WAS THE BCCCR'S DECISION ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, UNSUPPORTED BY SUBSTANTIAL EVIDENCE, OR CONTRARY TO LAW?

*Statement of Facts*

1. General Background

The Public Health Service ("PHS") Commissioned Corps is a uniformed service whose officers have a statutory entitlement to pay. 37 U.S.C. §§ 101(3), 204(a)(1). Its personnel are divided among several professional categories, one of which is the Pharmacist category. Each professional category is headed by a Chief Professional Officer ("CPO").

---

[1] Defendant has filed three A.R. volumes. The first two are paginated; the third (filed on June 23, 2006) is not. A paginated version of 3 A.R., commencing where 2 A.R. leaves off, is attached for the Court's convenience. In several places this brief refers to documents submitted to the Court in Plaintiff's May 7, 2004 Appendix to Cross-Motion

Under Instruction 6 of subchapter 23.4 of the PHS Commissioned Corps Personnel Manual ("CCPM"), each CPO, including the Chief Pharmacist Officer, A.R. 250, is appointed for a period of four years. A.R. 255 (§ F.1). Appointment of a CPO is made official by issuance of a personnel order specifying the effective date and the projected ending date of the appointment. *Id.* (§ F.2). The Surgeon General of the United States ("SG"), who heads the PHS, assigns officers to be Chief Pharmacist Officer, 42 U.S.C. § 206(b), and makes the final decision. A.R. 252 (§ E.1.b); *see also* A.R. 48. CPOs have the title of Assistant Surgeon General ("ASG") while serving as CPO. 42 U.S.C. § 206(b). ASGs "shall have the grade corresponding with either the grade of brigadier general [O-7] or the grade of major general [O-8], as may be determined by the Secretary after considering the importance of the duties to be performed." 42 U.S.C. § 207(a).

Instruction 6 further provides that "[i]f appointment of the CPO involves promotion of the nominee to the flag grade, regardless of whether the promotion is required by statute or is discretionary under 42 U.S.C. 206(c)(1), the promotion will be accomplished as part of the CPO selection process and is not subject to the flag rank promotion process described in INSTRUCTION 7, Subchapter CC23.4, 'Flag Officer Selection and Assignment' of this manual." A.R. 252 (§ E.1.c). The Instruction 7 process, in contrast to the one set forth in Instruction 6, *does* require secretarial approval. A.R. 258 (§ B.2). But Instruction 7 expressly does *not* apply to CPOs. A.R. 257 (§ A.2.b).

Commissioned Corps officers' records are subject to correction for error or injustice by the civilian BCCCR, under the PHS Act. 42 U.S.C. § 213a(a)(12) (extending correction

---

for Summary Judgment but not found in the A.R. These are cited as "Pl. App.").

of military records provisions of 10 U.S.C. § 1552 to Commissioned Corps personnel). A.R. 208 (1981); *see also* Pl. App. 210 (1991). Under 10 U.S.C. § 1552(g),

> the term "military record" means a document or other record that pertains to (1) an individual member or former member of the armed forces, or (2) at the discretion of the Secretary of the military department concerned, any other military matter affecting a member or former member of the armed forces, an employee or former employee of that military department, or a dependent or current or former spouse of any such person. Such term does not include records pertaining to civilian employment matters (such as matters covered by title 5 and chapters 81, 83, 87, 108, 373, 605, 607, 643, and 873 of this title).

2. Captain Brooks's Grievance and BCCCR Case

In 1999, Captain Brooks filed an application with the BCCCR seeking, among other things, a change in his date of rank. A.R. 87, 90. The BCCCR encouraged him to provide documents in support of his application. A.R. 48, 88, 110. He was assured they would remain confidential. A.R. 110 (¶ 2).

On September 18, 2000, Admiral David Satcher, the then-SG and Assistant Secretary for Health, Department of Health and Human Services ("HHS"), advised the Director of PHS's Division of Commissioned Personnel ("DCP," later known as the Office of Commissioned Corps Operations, or "OCCO") that he had selected Captain Brooks to be Chief Pharmacist Officer of the PHS for a term of four years to commence October 1, 2000. A.R. 112. Dr. Satcher also directed DCP to issue the appropriate orders, and stated that the position Captain Brooks was to fill would be a statutory flag billet (equivalent to Rear Admiral). *Id.*

Four days later, at the instruction of the Deputy Surgeon General, an ASG telephonically advised Captain Brooks that Dr. Satcher's September 18, 2000 letter had

been sent in error. Pl. App. 103.

On September 27, 2000, Captain Brooks was informed by telephone that he would be receiving a letter of reprimand ("LOR") for violating the Privacy Act, 5 U.S.C. § 552a, and that the LOR would cause him to lose his "star." A.R. 17 (¶ c), 48, 110. The misconduct cited in the LOR was that he "disclosed documents from an officer's record without authorization to" the BCCCR itself. A.R. 107. Captain Brooks had indeed sent such documents to the BCCCR in support of his own pending application, A.R. 107, having been given them because he was the other officer's supervisor. A.R. 110. Moreover, the BCCCR had assured him that filings with it are confidential. *Id.* (¶ 2).

The LOR was issued on September 28, 2000 and placed in Captain Brooks's Official Personnel Folder ("OPF"). The following day, citing "recent discoveries of misconduct" that were not further described, but obviously referring to the alleged Privacy Action violations underlying the LOR, *see* A.R. 383 (Captain Canton's "note to the record," last sentence), the SG rescinded Captain Brooks's selection as Chief Pharmacist Officer. A.R. 378. DCP prepared the rescission memorandum and issued the LOR on the same day. A.R. 107, 318, 379. OCCO did not disclose the rescission memorandum until nearly five years later, on September 1, 2005. A.R. 295, 296 (¶ 1). It was never previously furnished to Captain Brooks. A.R. 317. He first received it—from his own counsel—on September 8, 2005. *Id.*

When Captain Brooks grieved the LOR, Pl. App. 111, DCP resisted the grievance. Pl. App. 114; *see* A.R. 125. On January 9, 2001, however, the second level reviewer to whom Captain Brooks had appealed, A.R. 130, found the grievance valid because Captain Brooks had not violated the Privacy Act after all. A.R. 125. The LOR was therefore

rescinded on January 18, 2001, and ordered to be removed from his OPF. A.R. 124.

In the mean time, DCP had issued a circular expanding the pool of candidates for the position of Chief Pharmacist Officer. A.R. 390. Another officer was selected for the position as a result of the re-competition. A.R. 53.

Captain Brooks added the denial of his promotion and appointment to his case before the BCCCR. A.R. 106. Sticking to its guns, DCP opposed his claim, contending in effect that Dr. Satcher had no authority to effect the promotion or appointment without the approval of the Secretary of HHS. A.R. 53. DCP never sought to obtain secretarial approval of Captain Brooks's selection and promotion after the LOR the head of DCP had issued was rescinded. *Id.*

3. The BCCCR's First Decision

In a decision issued on June 19, 2002, A.R. 8, the BCCCR held that Dr. Satcher was authorized "to make the final decision on selecting the Chief Pharmacist and the promotion involved and that this would be accomplished as part of the Chief Pharmacist selection process." A.R. 18 (¶ d). The BCCCR concluded that:

> [t]he LOR resulted in an error and an injustice. This was proven to be so since the LOR was rescinded through the grievance process. It stopped the selection process and issuance of the Personnel Order which may have identified CAPT Brooks as the Chief Pharmacist and his promotion to the flag grade O-7.

*Id.* (¶ e).

> The BCCCR members

> recommended that, working with the Flag Officer Billet Board, and considering CAPT Brooks' qualifications and experiences, positions be

> identified within the Public Health Service that provide the appropriate level of complexity, responsibility and importance to merit designation as flag grade O-7 billets. That, for three years after the date of the decision by the Approving Official on this recommendation, he be allowed to compete for consideration for selection and promotion to appropriate O-7 positions by having his name included in lists of officers recommended by promotion boards. That, DCP send CAPT Brooks a status report 90 days after the date of the decision by the Approving Official outlining steps to be taken to implement this recommendation. That, DCP send CAPT Brooks a status report each time his name is included for consideration for selection and promotion to appropriate O-7 positions. Such status reports should include information the position for which he was considered and his relative standing on the list(s). Finally, within 90 days of the date of the decision by the Approving Official on this recommendation, CAPT Brooks has the option of pursuing with DCP a mutually acceptable alternative settlement rather than being considered for an O-7 position in the manner described herein.

A.R. 18-19.

On March 18, 2003, the Reviewing Official (a Deputy Assistant Secretary of HHS) disapproved the BCCCR's recommendation that Captain Brooks be given priority consideration for flag grade O-7 positions for three years. A.R. 288-89. In this connection the Reviewing Official wrote:

> In regard to CAPT Brooks' request for promotion to the Grade O-7, effective as of October 1, 2000, I believe that an injustice may have occurred when the Office of the Surgeon General failed to seek the Secretary's approval for the appointment of CAPT Brooks to the Chief Pharmacist position. It appears that the circumstances surrounding the issuance of the letter of reprimand to CAPT Brooks relating to a Privacy Act violation and the withdrawal of CAPT Brooks' appointment may have been related and may have influenced the Surgeon General to not seek the Secretary's approval. However, even if an injustice may have occurred, the remedy requested by CAPT Brooks is outside of the Board's authority since there is no record for the Board to correct in this matter due to the unique set of circumstances surrounding CAPT Brooks' preliminary selection for the Chief Pharmacist position. The position was a Flag Grade and required the Secretary's approval making the selection process for the Chief Pharmacist position different from the selection process utilized for other positions. In addition, there was no guarantee that even if the Surgeon General had sought the

> Secretary's approval, the Secretary would have concurred with the selection and the appointment of CAPT Brooks.

*Id.* at 289.

4. The 2005 Remand

On April 18, 2005, the Court denied a motion to dismiss defendant had filed and granted in part Captain Brooks's cross-motion for summary judgment, finding that the SG had appointed him to the CPO position, but that the record did not indicate when that appointment terminated. The Court therefore remanded for further proceedings. *Brooks v. United States*, 65 Fed. Cl. 135, 152 (2005); A.R. 355.

On November 30, 2005, the Deputy Assistant Secretary approved the BCCCR's responses to five questions framed by the Court's April 18, 2005 decision. A.R. 308. Of particular note is the BCCCR's response to the fourth question (Whether the LOR was the reason the Secretary's approval for Captain Brooks's promotion was never sought):

> Based on the limited information in the case file, it is the Board's contention that allegations of misconduct on the part of CAPT Brooks resulted in the issuance of the Letter of Reprimand, which ultimately led to the Surgeon General's rescission of his selection as Chief Pharmacy Officer.

A.R. 310.

The BCCCR reported that Captain Brooks's selection as CPO was rescinded in a letter dated September 29, 2000, *see* A.R. 378, but that it was unable to answer the Court's questions as to why a new selection board was convened and whether the SG's rescission memorandum was included in the file when the CPO position was recompeted (and hence whether Captain Brooks was prejudiced as a result). A.R. 310-11.

On January 4, 2006, defendant sought to supplement the record with informa-

tion from OCCO (but not from the BCCCR),[2] and on January 25, 2006 filed the first two volumes of the A.R.

5. The 2006 Remand

On February 1, 2006, the parties filed a Joint Status Report proposing a second remand. After a hearing and exchanges of pleadings from the parties regarding the terms of the proposed second remand, the Court on March 29, 2006 remanded again, this time with instructions that the BCCCR address seven questions.

On May 11, 2006, the Deputy Assistant Secretary approved the BCCCR's second decision on remand. A.R. 431. According to the board's report, A.R. 428-31, the BCCCR initially voted 2-1 to grant relief. A.R. 430 (¶ 4). The majority would have corrected Captain Brooks's record "to indicate that he served as CPO from October 1, 2000 until the appointment of another CPO in 2001 or the date that Capt. Brooks retired, whichever occurred first." *Id.* Inexplicably, even though the BCCCR's Executive Director does not have a vote, its report discloses that he agreed with the dissenting voting member.

---

[2] An email the Court ordered released to Captain Brooks supplies the background. The HHS Office of General Counsel wanted OCCO to answer those questions the BCCCR could not. Email from Joe Cocco (Program Support Center) to Gregory Stevens (Office of the Secretary), Dec. 20, 2005. OGC apparently thought it would be proper (and would avoid angering the Court) simply to obtain OCCO's answers and attach them to the BCCCR's decision. This behind-the-scenes maneuvering does not inspire confidence in the agency's process and would never have come to light had we not initiated discovery and had the Court not partially granted our motion to compel. OCCO apparently never gave up: it sought to file a lengthy submission with the BCCCR on the second remand in May 2006, but we have been advised by counsel for defendant that the BCCCR did not receive it until after the board had met; that it was not considered by the board during deliberations; and that defendant does not consider it part of the A.R. We have no reason to question the first two of these assertions, and therefore certainly agree that it is not part of the A.R. (and cannot be relied on as support for the agency's decision).

*Id.*

Thereafter, BCCCR member Kenneth D. Cannon, who had been in the majority, recommended that the board reconsider the case, and simultaneously changed his vote, thereby making it 2-1 to deny relief. A.R. 431.[3] Mr. Cannon wrote that

> even though the timing of the letter of reprimand is questionable, there is no hard evidence that it was based on the letter. Reviewing the sworn statement of RADM [Kenneth P.] Moritsugu [the Deputy SG][4] supports the fact that there were other reasons, not the letter, for rescinding the selection. Also the fact that in the letter to Capt. Brooks it does not mentioned [*sic*] the letter of reprimand, but the stated reason was recent discoveries of misconduct.

*Id.*

Nothing in the BCCCR's decision or the A.R. indicates either (a) what "other reasons" existed for rescinding Captain Brooks's selection or (b) the nature of the alleged "recent discoveries of misconduct." Dr. Moritsugu's declaration, to which the BCCCR referred, adverts (¶ 2) to "the discovery of facts indicating poor judgment and potential misconduct by" Captain Brooks, but provides *no details whatever*. A.R. 385 (¶ 2); *see also* A.R. 378. He also states (¶ 3), however, that "the Director of DCP alerted us, in response to the memo selecting CAPT Brooks, that there was an adverse action pending regarding this officer." An LOR is obviously an adverse action.[5] Given the fact that these events were occurring during the same time frame, the disclosure made to Cap-

---

[3] Captain Brooks was not informed of any of this until he received the BCCCR's 2006 decision.

[4] The declaration is reproduced at A.R. 385-86 (footnote added).

[5] LORs are among the disciplinary actions catalogued on PHS's website, which refers readers to DCP's (now OCCO's) "Adverse Action Officer." http://dcp.psc.gov/disciplinaryactions.asp#ques.

tain Brooks by the then-Director of DCP, *see* A.R. 48, and Dr. Moritsugu's declaration, the LOR obviously precipitated rescission of Captain Brooks's promotion.

Both initially and in its final recommended decision, the BCCCR was unanimously of the view that Captain Brooks had not violated the Privacy Act and that the LOR was therefore properly withdrawn. A.R. 430 (¶ 6). In addition, in response to the Court's fifth question, the BCCCR was unanimously of the view that *if* the LOR was the only reason the SG rescinded Captain Brooks's selection, the record should be corrected to indicate that he was appointed to the CPO position effective October 1, 2000. *Id.* (¶ 4). Central to the BCCCR's ultimate recommendation to deny relief was a 2-1 determination "that there is insufficient evidence to definitively conclude either that the LOR was the sole reason for the Surgeon General's decision to rescind Capt. Brooks' selection for appointment as CPO or that there were reasons other than the LOR that lead [*sic*; presumably should read "led"] to the decision." *Id.* (¶ 3). The BCCCR found that "the record is inconclusive in establishing that the LOR was the sole reason that the Surgeon General rescinded [Captain Brooks's] selection for appointment as CPO," *id.* (¶ 2f), and that "the record does not establish that the LOR was the reason for rescinding Capt. Brooks' appointment to CPO." A.R. 431 (¶ 6). It concluded that he was not entitled to relief "for failure to establish that a harmful error and injustice occurred." *Id.* (¶ 7).

Dr. Christopher DeGraw, who was now in dissent rather than a member of the majority, did not prepare a separate opinion. His email to the other members, however, confirmed that he saw no reason to change the recommendations to the Court as stated

in the original draft decision. A.R. 435.

6. Further Proceedings in this Court

On June 6, 2006, Captain Brooks filed a notice under what is now RCFC 52.2(b)(4) concerning certain pending document requests he had made. On June 23, 2006, defendant filed a third A.R. volume. There followed submission of a privilege log and proceedings with respect to discovery that were eventually resolved by the Court's April 23, 2007 Order.

Captain Brooks retired on March 1, 2007.

*Argument*

I

DEFENDANT HAS NOT CARRIED ITS BURDEN OF PROVING THAT CAPTAIN BROOKS'S PROMOTION TO REAR ADMIRAL WOULD HAVE BEEN RESCINDED EVEN IF HE HAD NOT RECEIVED THE LETTER OF REPRIMAND

Captain Brooks is entitled to relief because the BCCCR's second decision on remand is arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

An officer who has been properly selected for a position that carries with it a higher rate of statutory pay has a right to that pay unless his appointment has been lawfully derailed. A claim that challenges such a derailment is actionable. *Law v. United States*, 11 F.3d 1061, 1064-65 (Fed. Cir. 1993). The standards applicable to such a claim are the familiar ones of compliance with law or regulation, arbitrariness or capriciousness, or lack of substantial evidence. *E.g., Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). If the derail-

ment does not withstand review under those standards, then the make-whole relief is required, which can only mean giving effect, *nunc pro tunc*, to the SG's directive that personnel orders be issued making Captain Brooks the Chief Pharmacist Officer ("a statutory flag billet," A.R. 112) as of October 1, 2000. He should be deemed to have held that position for the four-year term provided for in the CCPM. He is entitled to additional active duty pay and allowances for those four years, and—beginning March 1, 2007 (the effective date of his retirement)—the retired pay of a Rear Admiral (lower half). He does not seek additional pay and allowances for the period from October 1, 2004 through February 28, 2007, nor does he contend either that he should be deemed to have continued in a flag billet following expiration of the normal four-year CPO tour or that he should be deemed to have been promoted to Rear Admiral (upper half) or any higher grade.

Despite the time this case has consumed with numerous extensions of time, two remands, and an unusual discovery dispute, it boils down to a very simple issue: does the BCCCR's final decision withstand scrutiny under the applicable standards? It clearly does not.

The key undisputed fact is, as it has been from the very beginning, that Captain Brooks received an LOR that the agency itself later determined to have been unjustified. The stated basis for the LOR was that he had violated the Privacy Act in connection with his response to an inquiry from the BCCCR in a case he had already filed before being selected as CPO. Between the time he received the LOR (*from the very PHS office that was his adversary before the BCCCR*) and the time his second-level griev-

ance concerning the LOR was granted, his appointment as CPO was rescinded.

It was an understatement for the BCCCR to admit that the timing "certainly gives the impression" that the LOR "was the basis for the decision." A.R. 429 (¶ 2c). The sequence of events in fact imposes on the government the burden of showing that the adverse personnel action—here, rescission of the appointment—would have occurred in any event—*i.e.*, even if there had been no LOR. *E.g., Engels v. United States*, 230 Ct. Cl. 465, 678 F.2d 173 (1982); *Frizelle v. Slater*, 111 F.3d 172, 179 (D.C. Cir. 1997). It has not done so. Quite the reverse, as the BCCCR itself squarely, unanimously, and fatally admitted, "there is insufficient evidence to definitively conclude either that the LOR was the sole reason for the Surgeon General's decision to rescind Capt. Brooks' selection for appointment as CPO or that there were reasons other than the LOR that lead [*sic*; presumably should read "led"] to the decision." A.R. 430 (¶ 3).

The BCCCR found that "the record does not establish that the LOR was the reason for rescinding Capt. Brooks' appointment to CPO," A.R. 431 (¶ 6), but that failure is fatal to defendant's case, not plaintiff's. If not the LOR, what was the cause? He has never been told of any other misconduct that might have been the basis for rescinding the appointment, as due process and the substantial evidence test certainly require. The BCCCR also clearly proceeded on the premise that it was incumbent on Captain Brooks to *disprove* harmlessness, rather than for PHS to *prove* harmless error. A.R. 430 (¶ 3), 431 (¶ 7). This effectively inverted the burden of proof.

Since the agency failed to carry its *Engels* burden of proof, and since the BCCCR found that "[i]f the [SG's] decision was based solely on the LOR, this would constitute a

harmful error and an injustice," A.R. 429 (¶ 2c), the board's refusal to grant relief was not only arbitrary and capricious, an abuse of discretion, and unsupported by substantial evidence, but also contrary to law.

II

CAPTAIN BROOKS IS ENTITLED TO MAKE-WHOLE RELIEF

The BCCCR has an "abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Duhon v. United States*, 461 F.2d 1278,1281 (Ct. Cl. 1972), quoting *Caddington v. United States*, 147 Ct. Cl. 629, 634, 178 F. Supp. 604, 607 (1959); *see also Thomas v. Cheney*, 925 F.2d 1407, 1423-24 (Fed. Cir. 1991). The board failed to do so.

Before Mr. Cannon switched sides, the BCCCR had decided that the proper remedy was to correct Captain Brooks's OPF "to indicate that he served as CPO from October 1, 2000 until the appointment of another CPO in 2001 or the date that Capt. Brooks retired, whichever occurred first," and "that he receive any compensation and privileges due from this corrective action." A.R. 430 (¶ 4). Presumably that is what the BCCCR would now direct if the case were remanded to it yet again for further consideration in light of a judicial determination in Captain Brooks's favor on Point I above. Since a further remand for that limited purpose would therefore be pointless, and in light of the considerable time this case has already consumed, we do not recommend a further remand. The date a new CPO was appointed as a result of the 2001 board is of no moment from the standpoint of Captain Brooks's entitlement to relief. That someone else was paid to fill the position is not his fault, but rather the result of PHS's un-

fairness is denying him the promotion he earned fair and square and which he was deprived of for a reason the agency itself later determined to have been legally unfounded.[6]

The relief the BCCCR was originally disposed to grant would not satisfy the *Caddington* test set forth above that the relief be *both* "thorough and fitting." In fact, it does neither. Rather, it makes a mockery of justice. With relief so obviously parsimonious, DCP/OCCO will have finally achieved what they have fought so zealously for over so many years. Relief that can only be described as pyrrhic is not in keeping with the broad remedial purpose of the record-correction process.

The only proper remedy—the only one that is *both* "thorough and fitting"—is to deem Captain Brooks to have served the full, normal four-year term for which he was selected and of which he was improperly deprived.

*Conclusion*

For the foregoing reasons, judgment should be entered for Captain Brooks for—

(a) the additional active duty pay and allowances he would have received for four years' service as CPO, and

(b) beginning March1, 2007 for the retired pay of a Rear Admiral (lower half),

in each case less lawful offsets.

To provide an entire remedy and complete the relief afforded by the judgment as provided in 28 U.S.C. § 1491(a)(2), the Court should also direct that Captain Brooks's

[6] Nor does the existence of the rescission memorandum that OCCO only found in 2005 (in the file for the 2001 board, A.R. 296) alter this. A rescission is without effect until communicated to the appointee. That was not done until September 8, 2005, long after

OPF be corrected to show that he served as CPO in the grade of Rear Admiral (lower half) for four years commencing October 1, 2000, and that he retired in that grade. His retirement order (Personnel Order No. 7044.003 dated Feb. 13, 2007) is among the OPF documents that would have to be corrected.

The Court also should grant such other and further relief as may, in the circumstances, be just and proper.

An opportunity to present oral argument is respectfully requested.

Respectfully submitted,

/s/
Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, D.C. 20036
(202) 466-8960 tel
(202) 293-8103 fax
efidell@feldesmantucker.com

*Attorney of Record for Plaintiff*

*Of Counsel*:

Matthew S. Freedus

June 21, 2007

---

Captain Brooks's four-year term as CPO expired. A.R. 317, 320.

Certificate of Service

I certify that I filed the foregoing Motion for Judgment on the Administrative Record electronically on June 21, 2007. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic case filing system. Parties may access this filing through that system.

/s/
Eugene R. Fidell